UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
ASSOCIATION OF FLIGHT           )
ATTENDANTS-CWA, et al.,         )
                                )
     Plaintiffs,                )
                                )
     v.                         )     Civil Action No. 08-2009 (RWR)
                                )
DELTA AIR LINES, INC.,          )
                                )
     Defendant.                 )
_____)
                                )
INTERNATIONAL ASSOCIATION OF    )
MACHINISTS AND AEROSPACE        )
WORKERS, AFL-CIO, et al.,       )
                                )
     Plaintiffs,                )
                                )
     v.                         )     Civil Action No. 08-2114 (RWR)
                                )
DELTA AIR LINES, INC.,          )
                                )
     Defendant.                 )
_____)

MEMORANDUM OPINION AND ORDER

     Various plaintiffs bring claims in these two actions under

the Railway Labor Act ("RLA"), 45 U.S.C. § 152, alleging that

efforts by defendant Delta Air Lines, Inc. ("Delta") to initiate

a seniority integration process to combine various pre-merger

Northwest Airlines, Inc. ("Northwest") and Delta employees

constituted unlawful interference with those employees' rights to

choose their own representatives and to organize and bargain

collectively.  Delta has moved to dismiss both actions under

Federal Rule of Civil Procedure 12(b)(1) for lack of subject

matter jurisdiction, arguing that the plaintiffs' claims amount to representation disputes within the exclusive jurisdiction of the National Mediation Board ("NMB" or "the Board").  Because the actions present no dispute over the representation of the relevant employees, the defendant's motions to dismiss will be denied.[1]

BACKGROUND

Plaintiffs Association of Flight Attendants-CWA ("AFA") and the International Association of Machinists and Aerospace Workers, AFL-CIO ("IAM") are labor unions.  When these actions were filed, AFA and IAM served as the certified bargaining representatives respectively for Northwest flight attendants and various Northwest employee crafts and classes.  (AFA Am. Compl. ¶¶ 4, 11; IAM Compl. ¶¶ 4; 11.)  Plaintiff District Lodge 143 is an organization affiliated with IAM that administered the

---

[1]     Plaintiffs also allege that Delta's efforts were premature and violated Public Law 110-161, Division K, Title I § 117.  (See Am. Compl. ¶¶ 32-37.)  Delta argues that the statute creates no private cause of action.  An alleged "violation of a federal statute alone is inadequate to support a private cause of action."  Tax Analysts v. I.R.S., 214 F.3d 179, 185 (D.C. Cir. 2000).  While "courts may infer [a private cause of action] from the language or structure of a statute or the circumstances of its enactment[,]" id., the plaintiffs point to no authority reflecting that this statute creates a private right of action or any language or legislative history from which a private remedy may be inferred.  However, because Delta brings its challenge under Rule 12(b)(1) (lack of subject matter jurisdiction) and not Rule 12(b)(6) (failure to state a claim), and Delta's jurisdictional challenge otherwise fails, its motion nevertheless will be denied.

collective bargaining agreement between IAM and Northwest for the various IAM-represented employees. (IAM Compl. ¶ 5.) Delta's relevant employees have not been represented by labor unions. (AFA Am. Compl. ¶ 11; IAM Compl. ¶ 11.)

In 2008, Northwest and Delta reached an agreement to merge, and Delta acquired all of the ownership interests in Northwest shortly thereafter. (AFA Am. Compl. ¶¶ 12-13.) Following the merger, Delta sent to AFA and District Lodge 143 separate letters stating its intention to initiate a seniority integration process that would merge various comparable groups of pre-merger Delta and pre-merger Northwest employees. (See AFA Am. Compl., Ex. 1; Mot. to Dismiss the AFA Am. Compl., Ex. 24.) Delta established seniority integration committees whose members included representatives elected by pre-merger Delta flight attendants, and representatives of certain other pre-merger Delta employees. Delta proposed that those representatives meet with representatives of the pre-merger Northwest employees "for the purpose of analyzing seniority data and seeking agreement on how seniority lists should be combined." (See AFA Am. Compl. ¶¶ 18, 19; IAM Compl. ¶¶ 19, 20.)

Plaintiffs allege that Delta's efforts to initiate a seniority integration process unlawfully interfered with the employees' rights under the RLA to choose their own representatives and to organize and bargain collectively. (AFA

Am. Compl. ¶¶ 25-26, 30-31; IAM Compl. ¶¶ 25-26, 30-31.)  Delta
moves to dismiss the plaintiffs' actions for lack of subject
matter jurisdiction, claiming that this matter is a
representation dispute over which the NMB has exclusive
jurisdiction.

DISCUSSION

In reviewing a motion to dismiss for lack of subject matter
jurisdiction under Rule 12(b)(1), a court "accepts as true all of
the factual allegations contained in the complaint . . . and may
also consider 'undisputed facts evidenced in the record.'"
Peter B. v. CIA, 620 F. Supp. 2d 58, 67 (D.D.C. 2009) (quoting
Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198
(D.C. Cir. 2003)) (internal citation omitted).  The party
claiming subject matter jurisdiction bears the burden of
demonstrating that such jurisdiction exists.  Khadr v. United
States, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  "[P]laintiff's
factual allegations in the complaint . . . will bear closer
scrutiny in resolving a 12(b)(1) motion than in resolving a
12(b)(6) motion for failure to state a claim."  Sheppard v. U.S.,
640 F. Supp. 2d 29, 33 (D.D.C. 2009) (internal quotation marks
and internal citation omitted).  Further, a court may consider
materials outside of the pleadings in deciding whether it has
subject matter jurisdiction to hear a case.  Hurt v. Lappin,
Civil Action No. 09-811 (RMC), 2010 WL 3022560, at *2 (D.D.C.

Aug. 3, 2010) (citing <u>Settles v. U.S. Parole Comm'n</u>, 429 F.3d
1098, 1107 (D.C. Cir. 2005)).

The RLA establishes the right of airline carrier employees
to "bargain collectively [with the carrier] through
representatives of their own choosing." 45 U.S.C. § 152, Fourth.
In relevant part, it states that "[t]he majority of any craft or
class of employees shall have the right to determine who shall be
the representative of the craft or class" and the representative
"shall be designated . . . without interference, influence, or
coercion by either party[.]" 45 U.S.C. § 152, Third, Fourth.
Further,

> [i]f any dispute shall arise among a carrier's
> employees as to who are the representatives of such
> employees . . . , it shall be the duty of the [NMB],
> upon request of either party to the dispute, to
> investigate such dispute and to certify to both
> parties, in writing, the name or names of the
> individuals or organizations that have been designated
> and authorized to represent the employees involved in
> the dispute, and certify the same to the carrier.

45 U.S.C. § 152, Ninth.

In <u>Switchmen's Union v. National Mediation Board</u>, 320 U.S.
297, 303 (1943), the Supreme Court held that the NMB's authority
to resolve representation disputes is exclusive. "[I]f Congress
had desired to implicate the federal judiciary and to place on
the federal courts the burden of having the final say on any
aspect of the problem, it would have made its desire plain." <u>Id.</u>
Thus, "[t]he right of a majority of the employees to choose the

bargaining representative is protected by the NMB's certification
power under § 2, Ninth, to the exclusion of any concurrent
judicial protection." Ass'n of Flight Attendants (AFA), AFL-CIO
v. Delta Air Lines, Inc., 879 F.2d 906, 911 (D.C. Cir. 1989)
(citing Switchmen's Union, 320 U.S. at 301).

Whether a case involves a representation dispute "within the
exclusive jurisdiction of [the NMB] depends upon . . . the
substantive cause of action." Id. at 915. A representation
dispute is resolved by "defining the bargaining unit and
determining the employee representative [if any] for collective
bargaining." Western Airlines, Inc. v. Int'l Bhd. of Teamsters,
480 U.S. 1301, 1302 (1987). Employees initiate representation
proceedings by filing an application for investigation of a
representation dispute. Representation Manual[2] ("Manual")
§ 1.02. "If employees have not sought [such] 'investigation'

_____

[2]    The NMB Representation "Manual provides general
procedural guidance to the [NMB's] staff with respect to the
processing of representation cases[.]" Manual Notice. The
Manual outlines the procedures for filing an application for
investigation of a representation dispute, conducting the NMB's
investigation, making its single-carrier determination, and
sponsoring representation elections by phone, internet, or mail.
See generally id. The Manual therefore outlines how the NMB
should preside over representation proceedings involving "labor
organization(s) or individual(s) seeking to represent a carrier's
employees and any incumbent representative[.]" Id. § 1.01-7.
The Manual applies, and the NMB's authority is triggered, only if
a labor union or individual submits an application for
investigation of a representation dispute. Railway Labor Exec.
Ass'n (RLEA) v. NMB, 29 F.3d 655, 665 (D.C. Cir. 1994).

. . . , none can be initiated[.]" <u>Railway Labor Exec. Ass'n</u>

<u>(RLEA) v. NMB</u>, 29 F.3d 655, 662 (D.C. Cir. 1994).  "Congress left

no ambiguity in the language of Section 2, Ninth: the Board may

investigate a representation dispute *only* upon request of the

employees involved[.]"  <u>Id.</u> at 664 (emphasis in original).

During and after its investigation, the Board retains exclusive

authority to grant, withhold and terminate representation

certifications.  <u>Gen. Comm. v. Missouri-Kansas-Texas R.R. Co.</u>,

320 U.S. 323, 336 (1943).  The Board's certificate designates a

representative for the purpose of collective bargaining, <u>see</u>

<u>RLEA</u>, 29 F.3d at 662 (quoting <u>Switchmen</u>'s, 320 U.S. at 304), and

the certification survives a merger.  Manual § 19.7 ("Existing

certifications remain in effect until the NMB issues a new

certification or dismissal.")

Two findings precede a certification decision by the Board.

First, the Board must make a single carrier determination.

Manual § 19.5.  Section 19.4 of the NMB Representation Manual

provides that "'[a]ny organization or individual may file an

application, supported by evidence of representation or a showing

of interest . . . seeking a NMB determination that a single

transportation system exists.'"[3]  <u>In re: Air Line Pilots</u>

---

[3]     Again, the NMB may make a single-carrier determination
only after receiving an application for investigation of a
representation dispute from a carrier's employees.  <u>RLEA</u>, 29 F.3d
at 664; NMB Representation Manual § 19.5.  Absent such an
application, the NMB is without authority to investigate a

-8-

Association (ALPA), 36 NMB 36, 50 (2009).  If "a substantial
integration of operations, financial control, and labor and
personnel functions" exists, Burlington N. Santa Fe Ry. Co., 32
NMB 163, 171 (2005), the Board deems the two merged carriers a
single transportation system for representation purposes of the
petitioning craft.  See, e.g., ALPA, 36 NMB at 53 (finding that
post-merger Delta and Northwest operate as a single carrier for
representation purposes as to the craft or class of petitioning
pilots); In re: AFA, 37 NMB 323, 336 (2010) (finding that post-
merger Delta and Northwest "operate as a single transportation
system for representation purposes for the craft or class of
[petitioning] flight attendants")[4]; US Airways/America W.
Airlines, 35 NMB 65, 78 (2008) (finding "that [the two carriers]
operate as a single transportation system for representation
purposes for the craft or class of Pilots"); US Airways/America
W. Airlines, 33 NMB 339 (2006) (making the determination as to
stock clerks).  The NMB then "proceed[s] to address the
representation of the . . . craft or class [at issue]."
Manual § 19.6.

Before issuing a certificate, the Board also analyzes the
results of any representation election among employees.

---

representation dispute, make a single-carrier determination, or
sponsor a representation election.  See RLEA, 29 F.3d at 665.

    [4]    See discussion *infra* at 16 and n.6.

See 45 U.S.C. § 152, Fourth. The election is held to determine whether a majority of employees supports the union seeking certification. Id. The RLA therefore authorizes the Board to "take a secret ballot of the employees involved, or to utilize any other appropriate method . . . [to] insure the [employees'] choice of representatives . . . [is free from the carrier's] interference, influence, or coercion[.]" 45 U.S.C. § 152, Ninth. Having confirmed the majority's free choice, the NMB may certify the appropriate representative. A district court may neither review such certification nor make a certification itself. Delta Airlines, Inc., 879 F.2d at 911. Indeed, "as soon as [an] action reveals a representation dispute, the court is required to dismiss the complaint." ALPA v. Texas Int'l Airlines, Inc., 656 F.2d 16, 22-24 (2nd Cir. 1981) (citing Ruby v. American Airlines, Inc., 323 F.2d 248, 255 (2d Cir. 1963)).

Judicial intervention under the RLA can be warranted under certain circumstances, though. Courts may be called upon to enforce either the RLA's provisions or the NMB's representation certification. For example, Tex. & N.O.R. Co. v. Bhd. of Ry. Clerks, 281 U.S. 548, 555 (1930) involved a wage dispute between a railroad carrier and an employee union that had been referred to the NMB. The railroad carrier meanwhile had formed a company union and sought to intimidate members of the employee union and coerce them to withdraw from it. The carrier recognized the

company union as the bargaining representative of the employees and refused to recognize the employee union. <u>Id.</u> at 556-57. The Supreme Court ruled that § 2, Third, which prohibits interference, influence, or coercion by either party over the designation of representatives by the other, was crucial to the functioning of the RLA and was judicially enforceable. <u>Id.</u> at 560 (noting that the "railroad company and its officers were actually engaged in promoting the organization of the association in the interest of the company and in opposition to the [employee union]"). In <u>Virginian Ry. v. Sys. Fed'n No. 40</u>, 300 U.S. 515, 549 (1937), the Court upheld an injunction restraining an interstate rail carrier from interfering with the union employees' rights by fostering a company union and entering into a contract concerning rules, rates of pay, and working conditions with a representative other than the employees' true representative. Further, in <u>Chicago & N.W. Ry. v. United Transp. Union</u>, 402 U.S. 570, 593 (1971), the Court held that the requirement of § 2, First to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions imposes a judicially enforceable obligation. The common thread throughout these cases is that "but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had

written into the [RLA]. The result would have been that the 'right' of collective bargaining was unsupported by any legal sanction." Switchmen's Union, 320 U.S. at 300. Courts, then, have jurisdiction to entertain complaints that a carrier is interfering with employees' rights to organize and choose their own representatives.

To support its argument against federal jurisdiction, Delta conflates representation *issues* with representation *disputes*. (See Mot. to Dismiss at 1; Def.'s Mem. in Supp. of Mot. to Dismiss at 3, 17) ("Def.'s Mem.")). The former is used in Delta's briefs as a catchall phrase for all "issues arguably related to" or "inextricably intertwined"[5] with representation.

_____

[5] Delta argues that "[c]ourts [lack] jurisdiction over claims . . . which 'are inextricably intertwined with a representation dispute, which is within the exclusive jurisdiction of the [NMB].'" (Def.'s Mem. at 3 n.3) (quoting Indep. Fed'n of Flight Attendants (IFFA) v. Cooper, 141 F.3d 900, 903 (8th Cir. 1998)). IFFA involved a conflict arising from an NMB decision. The NMB "ha[d] already determined that [a union] did not [act] unlawful[ly] . . . [by utilizing a rival union's president] during [the union's] organizing campaign." Id. The court therefore held that "[a]n injunction against [the union]'s future employment of [the rival union's president] would be the functional equivalent of judicial review of [the NMB's] conclusion, which is clearly prohibited." Id. (citing Switchmen's, 320 U.S. at 303).

No NMB decision is at issue here. To the contrary, AFA and IAM jointly requested "declaratory relief in order to prevent premature initiation of the seniority integration process *before* the NMB has resolved the matter of representation." (Joint Opp'n to Mot. to Dismiss at 3) (emphasis added.) Because neither AFA nor IAM seek judicial review of any NMB decision, and because awarding declaratory relief would not be "functional[ly] equivalent" to judicial review of an NMB decision, Delta's

See <u>Delta Air Lines, Inc.</u>, 879 F.2d at 916.  (<u>See also</u> Def.'s
Mem. at 3 n.3.)  The latter is a legal term of art.  It
"involve[s] the composition of the collective bargaining unit and
the identity of that unit's authorized representative for
collective bargaining purposes."  <u>United Transp. Union v. Gateway</u>
<u>W. Ry. Co.</u>, 78 F.3d 1208, 1213 (7th Cir. 1996) (citing <u>Western</u>
<u>Airlines</u>, 480 U.S. at 1302.  The distinction between the terms
surfaced in 1989 when Delta advanced the same jurisdictional
argument against the same party before the D.C. Circuit.  (Def.'s
Mem. at 4.) ("Indeed, AFA has previously litigated this very
jurisdictional issue with Delta in the context of an earlier
merger.")  The court responded that "[t]o the extent Delta
suggests that every case that merely entails an issue of
representation must be brought before the NMB, . . . that
argument plainly proves too much."  <u>Delta Airlines, Inc.</u>, 879
F.2d at 916.

No representation dispute lurks within the four corners of
AFA's amended complaint or IAM's complaint.  Neither are issues
"inextricably intertwined" with representation disputes presented
here, because the question of which representative was certified

_____

argument fails.  The <u>IFFA</u> court could "conceive of no remedy for
the[] claims [before it] that would not impermissibly involve the
Mediation Board's certification decision."  <u>IFFA</u>, 141 F.3d at
903.  The remedy requested here would merely have enabled
organizing efforts preceding any certification decision to
proceed unfettered.

was distinct and settled.  At the time Delta filed its motions to dismiss, AFA was Northwest flight attendants' certified bargaining representative, while Delta's flight attendants were nonunionized.  See In re: AFA, 37 NMB at 323; Manual § 19.7.  Similarly, IAM was the certified representative of various Northwest employee crafts or classes, and Delta's comparable em.ployees were nonunionized.  (IAM Compl. ¶¶ 4, 11.)

Moreover, the authority Delta cites to establish lack of jurisdiction is plainly distinguishable.  See, e.g., Air Line Employees Ass'n (ALEA) v. Republic Airlines, 798 F.2d 967, 968 (7th Cir. 1986) (affirming dismissal of complaint for lack of jurisdiction where "[c]ontinuation of [a collective bargaining agreement] in force unavoidably constitute[d] a determination of employee representation"); ALPA v. Tex. Int'l Airlines, 656 F.2d at 22 (affirming dismissal of complaint for lack of jurisdiction where judicial intervention "would necessarily involve this Court in determining, as a substantive matter, whether ALPA is the proper representative of the New York Air pilots"); IAM v. Northeast Airlines, Inc., 536 F.2d 975, 977 (1st Cir. 1976) ("Where there is no real question about whether a union is the legitimate representative of an airline's employees, the function of deciding the extent of the duty to bargain rests properly with the federal courts. . . . [Here,] the merger created real doubts about whether plaintiffs represent the majority of any Delta

craft or class of employees, and where there is such doubt, federal courts leave resolution of the dispute to the [NMB]."); IUFA v. Pan Am. World Airways, 836 F.2d 130, 131 (affirming dismissal of complaint for lack of jurisdiction because "the issue of whether the former Ransome employees may bargain as a unit or are to be represented by the larger unit is a paradigmatic representation issue subject to resolution by the National Mediation Board"); AFA v. United Airlines, Inc., 71 F.3d 915, 918 (D.C. Cir. 1995) ("It is rather obvious that if two airlines merge and their employees in the same jobs are represented by different unions the federal courts lack jurisdiction over *collective bargaining claims* because a representation issue is necessarily implicated.") (emphasis added); Flight Eng'rs Int'l. Ass'n, PAA Chapter, AFL-CIO (FEIA) v. Pan Am. World Airways, Inc., 896 F.2d 672, 673 (2d Cir. 1990) (stating that dispute alleging violations of collective bargaining agreement "implicated representation concerns within the exclusive jurisdiction of the NMB, *i.e.*, whether the union's certification applied to the subsequently acquired Ransome subsidiary"). Unlike in the cases above, there is no "real doubt" here about who if anyone represented the post-merger flight attendants when these actions were filed. See IAM v. Northeast Airlines, Inc., 536 F.2d at 977. Neither is there any request for enforcement of a collective bargaining agreement

negotiated by a union that did not represent employees of the
acquiring carrier.  See AFA v. United, 71 F.3d at 918.

Still, Delta argues that the plaintiffs' claims amount to
representation disputes.  Delta maintains that in order to grant
the plaintiffs the relief they seek,

> the Court would first have to determine (a) whether the
> Delta-Northwest combination created a "single
> transportation system" for representation purposes
> under the RLA; and (b) what [the plaintiffs'] post-
> merger representation rights are and will be with
> respect to some or all of the combined group of Delta
> and Northwest flight attendants.

(Def.'s Mem. at 3.)  According to Delta, then, this case belongs
before the NMB for a single carrier determination and
certification.

Despite Delta's contention, neither party argues or presents
facts challenging the employees' choices about representatives.
Delta's own letters to Northwest executives recognized fully
Delta's and Northwest's different representation status.  (See
Am. Compl., Ex. A at 1 ("The purpose of this letter is to
initiate the seniority integration process . . . , in accordance
with . . . the recently enacted federal law which requires the
fair and equitable integration of seniority lists when two
airlines combine and the combining groups have different
representation status."); see also Def.'s Mot., Exs. 23, 24.)
Since an existing certification persists until it is terminated,
or until the Board issues a new one, Manual § 19.7, no competing

representation claims warranting Board resolution were presented
in plaintiffs' complaints here.  Indeed, "the Board [was] free to
make its own decision on that issue," AFA v. United, 71 F.3d at
919, and has now done so.  On July 1, 2010, AFA filed an
application for investigation of a representation dispute with
the NMB, specifically concerning the craft or class of flight
attendants.  In re: AFA, 37 NMB at 336.  On August 17, 2010, the
Board deemed post-merger Delta and Northwest a single carrier
"for representation purposes under the RLA."  Id.  "The
investigation will proceed to address the representation of this
craft or class."  Id.  "The participants are reminded," the Board
cautioned, "that under Manual Section 19.7, existing
certifications remain in effect until the Board issues a new
certification or dismissal."  Id.[6]  Delta's claim that resolving

_____

[6]     The IAM likewise submitted an application for
investigation of a representation dispute.  In November of 2010,
the NMB dismissed both unions' applications.  On November 3,
2010, the NMB announced that a slim majority of eligible voters
opposed AFA's bid to represent all of Delta's post-merger flight
attendants.  Report of Election Results, available at
http://www.nmb.gov/electionresults/election-results_r-7254.pdf.
One day later, the NMB dismissed AFA's case.  Fiscal Year 2011
NMB Determinations, available at
http://www.nmb.gov/representation/deter2011/fy11cite.html.
Post-merger Delta's fleet service employees, along with its stock
and stores employees, likewise participated in representation
elections.  On November 18 and 22, 2010, respectively, these two
crafts or classes of employees voted "for no representative."
Report of Election Results, available at
http://www.nmb.gov/electionresults/election-results_r-7256.pdf;
Report of Election Results, available at
http://www.nmb.gov/electionresults/election-results_r-7258.pdf.
The NMB dismissed IAM's cases within twenty-four hours of each

plaintiffs' complaint requires a single carrier or representation determination from this court is moot.

What the plaintiffs allege is that Delta engaged in conduct that violates the RLA.  For example, the plaintiffs allege that "the committee established by Delta to represent its pre-merger flight attendants in the seniority integration process constitutes a company-dominated union" (AFA Am. Compl. ¶ 26), and that Delta's "demand that a seniority arbitration proceeding go forward prior to a craft or class determination by the NMB . . . is part of Delta's ongoing campaign to . . . interfere with AFA as the certified representative of Northwest flight attendants[.]"  (Id. ¶ 30.)  These allegations raise the question of whether Delta's conduct violated the RLA's prohibition on a carrier interfering with employees' rights to choose their representatives and bargain collectively.  Thus, the plaintiffs' claims are not representation disputes subject to the exclusive jurisdiction of the NMB, and Delta's motions will be denied.

## CONCLUSION AND ORDER

Because plaintiffs' claims do not implicate a representation dispute subject to the exclusive jurisdiction of the NMB, Delta's motions to dismiss for lack of subject matter jurisdiction will be denied.  Accordingly, it is hereby

---

election.

ORDERED that defendant's motions to dismiss the plaintiffs' complaints be, and hereby are, DENIED.

SIGNED this 21st day of December, 2010.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge